UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES,

                              1:17-CR-00092 JLS (MJR)

                              REPORT AND
                              RECOMMENDATION

      v.

NATHANIEL GATES, JR.,

              Defendant.

This case was referred by the presiding District Judge, to this Court, pursuant to 28 U.S.C. §636(b)(1), to handle all pre-trial matters and to make a recommendation as to all dispositive motions.[1]  (Dkt. No. 3)  Before the Court is defendant Nathaniel Gates, Jr's second motion to dismiss the Superseding Indictment on the grounds that his speedy trial rights have been violated.  (Dkt. No. 168)  Defendant also moves to dismiss the Superseding Indictment on the grounds of misconduct by the Government in the presentation of evidence to the grand jury.  (Id.)  For the following reasons, it is recommended that defendant's second motion to dismiss the superseding indictment be denied in all respects.

## PROCEDURAL HISTORY AND BACKGROUND

This case arises from allegations that Gates sold narcotics to a confidential source on November 23, 2016, January 26, 2017 and February 2, 2017.  The charges also encompass the discovery of narcotics and other materials related to drug trafficking on

---

[1] This case was initially referred to this Court by the Honorable Lawrence J. Vilardo on May 11, 2017. (Dkt. No. 3)  On July 27, 2020, this case was reassigned to the Honorable John L. Sinatra, Jr.  (Dkt. No. 163)

February 7, 2017 during the execution of a search warrant at 90 Brigham Road, Apt. 17, Fredonia, New York ("90 Brigham Road"), a residence used by Gates.  As explained in more detail below, Gates was not initially charged with the totality of this conduct from the inception of this case.  Instead, he first faced New York State charges, which were later dismissed, followed by a criminal complaint, an indictment, and later a superseding indictment in the United States District Court for the Western District of New York (the "Western District").

### State and Federal Complaints

On February 6, 2017, Gates was charged by felony complaint in New York State Court with various drug offenses related to his alleged sale of narcotics to a confidential source on November 23, 2016.  (Dkt. No. 45-1, Exh. L)  On February 17, 2017, a criminal complaint was filed in the Western District charging Gates with: (1) possession with intent distribute cocaine on January 26, 2017; (2) possession with intent to distribute 28 grams or more of cocaine base on February 2, 2017; (3) possession with intent to distribute heroin on February 7, 2017; and (4) possession with intent to distribute cocaine on February 7, 2017 (the "Federal Criminal Complaint").  (Dkt. No. 1)  The charges in the Federal Criminal Complaint encompassed Gates' alleged drug sales to the confidential source on January 26, 2017 and February 2, 2017, and the results of the February 7, 2017 search of 90 Brigham Road.  (*Id.*)  The Federal Criminal Complaint did not encompass Gates' alleged narcotics sale on November 23, 2016.  The Court held an initial appearance on the Federal Criminal Complaint on February 24, 2017, at which time

Gates did not oppose detention but reserved his right to move for release should his circumstances change.[2]  (Dkt. No. 3)

*Indictment*

On May 11, 2017, a federal grand jury in the Western District returned an indictment against Gates charging: (1) possession with intent to distribute cocaine on January 26, 2017, in violation of Sections 841(a)(1) and 841(b)(1)(C) of Title 21 of the United States Code; and (2) possession with intent to distribute 28 grams or more of a mixture and substance containing cocaine base on February 2, 2017, in violation of Sections 841(a)(1) and 841(b)(1)(B) of Title 21 of the United States Code (the "Indictment").  (Dkt. No. 5)  The Indictment charged only the alleged narcotic sales on January 26, 2017 and February 2, 2017.  The Indictment did not charge Gates with the sale of drugs on November 23, 2016, as alleged in the New York State Court charges pending against him at that time, or the results of the February 7, 2017 search of 90 Brigham Road, which had been included in the Federal Criminal Complaint.

Gates was arraigned on the Indictment on May 19, 2017.  (Dkt. No. 9)  Gates pled not guilty and the Court discussed a scheduling order including the provision of voluntary discovery and the filing of pretrial motions.  (*Id.*)  The Government indicated that it had already provided some discovery to defendant and was waiting the results of laboratory reports as to items recovered during the execution of the search warrant at 90 Brigham Road on February 7, 2017.  (*Id.*)  The Government acknowledged that while the evidence recovered from the February 7, 2017 search was charged in Counts 3 and 4 of the Federal

---

[2] At the time of his initial appearance, Gates was being held in primary state custody based upon the pending charges against him in New York state court arising from the November 23, 2016 controlled purchase.

Criminal Complaint, those results did not form the basis of any charges in the Indictment. (*Id.*) The Court questioned if the Government intended to supersede the Indictment, and the Government indicated that this decision would depend upon the results of the laboratory reports. (*Id.*) Defense counsel requested sixty days to file pretrial motions and the Court set a deadline of July 19, 2017.[3] (*Id.*) The parties noted that the New York State Court charges against Gates had recently been dismissed. (*Id.*) Defendant moved for bail and requested that the Court schedule a detention hearing. (*Id.*) A detention hearing was held on May 26, 2017, at the conclusion of which the Court ordered Gates to be detained in the custody of the United States Marshal Service pending trial. (Dkt. No. 11)

*Pretrial Motions and Evidentiary Hearings*

Defense counsel moved to extend the deadline for the filing of pretrial motions on July 17, 2017, and again on September 15, 2017. (Dkt. Nos. 14, 17) Both extension requests were made on the basis that the parties were engaged in ongoing plea negotiations in an attempt to resolve the matter before trial. (*Id.*) A letter to Gates from defense counsel dated September 11, 2017 reflects that, during this time, defense counsel was strongly encouraging Gates to accept a plea offer made by the Government. (Dkt. No. 168-3, pgs. 6-7) Specifically, counsel informed Gates that should he elect to file pretrial motions, the Government intended to pursue an Information Pursuant to 21 U.S.C. § 851 ("851 Information"), which would categorize Gates as a career offender, based upon his two prior felony convictions. (*Id.*) Counsel told Gates that the 851 Information had the potential to significantly increase his potential penalties, and

---

[3] As of May 19, 2017, no time has elapsed under the Speedy Trial Act.  The Court excluded Speedy Trial Act time through July 19, 2017, the due date for filing pretrial motions.  (Dkt. No. 10)

specifically that it would subject Gates to a ten-year mandatory minimum sentence as opposed to the five-year mandatory minimum sentence he currently faced. (*Id.*) Counsel advised Gates that in light of the Government's position, and the fact that the video of the controlled buy was extremely strong evidence of guilt, Gates should delay the filing of pretrial motions and consider accepting the plea bargain. (*Id.*) A file memorandum drafted by defense counsel on October 17, 2017 indicates that, in response to counsel's September 11, 2017 letter, Gates refused to consider the plea offer, and instead expressed a desire "to go forward, to file motions, and to assert speedy trial rights." (Dkt. No. 168-3, pg. 8) The file memorandum went on to state that, in accordance with Gates' position, defense counsel intended to file pretrial motions.[4] (*Id.*)

Defense counsel again moved to extend the deadline for the filing of pretrial motions on October 18, 2017 and November 14, 2017. (Dkt. Nos. 20, 23) In those requests, defense counsel again noted that the parties were engaged in plea negotiations. (*Id.*) However, consistent with the information set forth in counsel's October 17, 2017 file memorandum and Gates' rejection of the plea offer, defense counsel also requested additional time to research potential pretrial motions. (*Id.*) In the extension request filed on November 14, 2017, defense counsel noted that he sent a further discovery request to the Government on October 31, 2017, which would be highly relevant to motion practice, and that he was waiting for the discovery to be provided.[5] (Dkt. No. 23) Consistent with his representations in the extension requests that he was

---

[4] The Court notes that defense counsel's memorandum indicated that he intended to file motions on their due date of October 18, 2017. (Dkt. No. 168-3, pg. 8) However, as explained *infra*, it appears counsel determined that he needed additional time to research and request more discovery from the Government.
[5] In all four extension requests, defense counsel affirmed that defendant and the Government agreed that speedy trial time was excludable in the interests of justice. (Dkt. Nos. 14, 17, 20, 23) Each of defendant's requests for an extension of time to file pretrial motions were granted and STA time was excluded upon the approval of each extension request. (Dkt. Nos. 16, 19, 22, 26)

5

seeking additional discovery and researching the filing of pretrial motions, defense counsel filed a discovery motion on December 6, 2017.    (Dkt. No. 27)

On December 11, 2017, this Court held a conference with the Government, defense counsel, and Gates.    (Dkt. No. 28)    The purpose of the conference was to address a letter sent by Gates to the Court.    (*Id.*)    The letter was written by Gates on October 13, 2017 and received by the Court on October 18, 2017.    (*Id.*)    In the letter, Gates complained that he had informed defense counsel that he wanted to "exercise his right to a speedy trial", and that he had not consented to his counsel's prior requests to extend the pretrial motion deadlines.[6]    (Dkt. No. 168-3, pgs. 1-3)    At the start of the conference, the Court inquired as to whether defense counsel had reviewed Gates' letter to the Court.    (Dkt. No. 167-3, pgs. 12-13)    Defense counsel responded:

> I've actually spoken to Mr. Gates since he drafted this letter and I spoke with him again this morning; [co-counsel] spoke with him again this morning, in fact.    And it's my understanding that the issues that are outlined in the letter have all been addressed.

(*Id.*)    The Court then asked Gates if that representation by defense counsel was true, and Gates responded "Yes, Your Honor."    (*Id.*)    Next, the Court acknowledged that defense counsel had filed a motion to compel discovery a few days prior.    (*Id.* at pgs. 14-16)    The Court noted its intent to resolve the motion on a "fairly short time frame", and put a briefing schedule in place.    (*Id.*)    The Government was given one week to respond, and oral argument was scheduled for January 3, 2018.    (*Id.*)    Oral argument went forward as scheduled on January 3, 2018, during which time the Court resolved the discovery issue.

---

[6] The letter also states that Gates had not consented to defense counsel's adjournment of his September 2017 trial.  (Dkt. No. 168-3, pg. 2)  A trial date was never scheduled in this matter for September 2017. This statement seems to be based on Gates' belief, stemming from his prior experiences as a defendant in state court criminal proceedings, that trials were routinely scheduled to begin one month after the deadline for filing of pretrial motions.  (Dkt. No. 168-2)

(Dkt. No. 30)  The Court set a new deadline of February 21, 2018 for the filing of pretrial motions, and Speedy Trial Act time was excluded through that date.  (Dkt. No. 31)

Defendant filed pretrial motions on February 21, 2018, including a motion to suppress evidence recovered during the February 7, 2017 search of 90 Brigham Road. (Dkt. Nos. 34-38)  As noted previously, at the time the pretrial motions were filed, the pending Indictment did not charge Gates with conduct related to the results of the February 7, 2017 search.  However, defense counsel moved to suppress this evidence in the event that the Government may attempt to introduce it against Gates, at trial, pursuant to Federal Rule of Evidence 404(b).  (Dkt. No. 130-4, pg. 11)  The Government filed a response to defense motions on March 7, 2018.  (Dkt. No. 39)  Following a request for an extension of time by defense counsel, defendant filed a reply on April 4, 2018.  (Dkt. Nos. 40, 45)  The Court heard oral argument of the pretrial motions on April 17, 2018, granted defendant's request for an evidentiary hearing, and scheduled the hearing for June 21, 2018.  (Dkt. No. 46)

Prior to the evidentiary hearing, a conflict arose between Gates and his counsel, and Gates was appointed a new attorney on June 18, 2018.  (Dkt. Nos. 53, 57)  The evidentiary hearing was adjourned to August 9, 2018 to allow Gates' new attorney time to prepare.  (Dkt. No. 57)  Following one request for an adjournment by defense counsel, the Court held an evidentiary hearing on August 17, 2018.  (Dkt. Nos. 60, 69)  The hearing addressed Gates' contention that the warrant authorizing the search of 90 Brigham Road on February 7, 2017 contained false or misleading statements.  (*Id.*)  During the proceeding, a dispute arose as to the scope of the hearing, including whether defense counsel could, over the Government's objection, question the testifying officer about the

7

nature and circumstances of the controlled purchases on November 23, 2016, January 26, 2017 and February 2, 2017 as well as whether defense counsel could subpoena the confidential source involved in the purchases to testify.  The Court permitted further briefing and scheduled oral argument for September 24, 2018.  (Dkt. No. 67)  Defense counsel requested a 21-day extension of time due to the press of other matters and a recently scheduled surgery.[7]  (Dkt. No. 71)  An amended briefing schedule was issued and oral argument was scheduled.  (Dkt. Nos. 74, 75, 77, 78)  At the conclusion of oral argument on November 20, 2018, the Court granted defendant's requests to continue the hearing and to permit additional questioning by defense counsel regarding the background and circumstances of the controlled purchases.  (Dkt. No. 79)  In order to accommodate the trial schedules of counsel for both the Government and defendant, and to ensure that all necessary witnesses would be available, the Court scheduled the continuation of the evidentiary hearing for February 22, 2019.  (Id.)  The hearing was held and concluded on that date, and the Court set a schedule for post-hearing submissions and oral argument.[8]

### Defense Counsel's Illness and Post-Hearing Briefing

On April 5, 2019 and April 22, 2019, defense counsel requested extensions of time to file a post-hearing brief due to significant medical issues he was experiencing, including an out-of-state surgery.  (Dkt. Nos. 88, 91)  A new deadline of July 2, 2019 was set for

---

[7] The Government first opposed defense counsel's request for an extension because of speedy trial concerns and the Second Circuit's ruling in United States v. Tigano, 880 F.3d 602 (2d Cir. 2018).  (Dkt. No. 72)  However, the Government later withdrew its objection in light of defense counsel's medical circumstances.  (Id.)

[8]  At the time of the prior oral argument addressing the scope of the hearing, the Court ordered the Government to produce the confidential source for questioning by defense counsel regarding the controlled purchases.  However, at the conclusion of the officer's testimony during the continued hearing, the Court determined that testimony from the confidential source was not necessary to make a determination as to defendant's suppression motion.  (Dkt. Nos. 80-86)

post-hearing briefing.  On June 28, 2019, defense counsel requested another 60-day extension of time to file post-hearing briefing as a result of daily medical treatments which were severely limiting his ability to work.  (Dkt. No. 96)  Briefing was postponed until September 6, 2019.  (Dkt. No. 98) The Government filed a post-hearing brief on September 5, 2019.  (Dkt. No. 99)  On September 16, 2019, defense counsel filed a motion requesting another extension of time as well as a status conference before the Court to discuss the possibility of a change of counsel.  (Dkt. No. 102)  Defense counsel noted in the request that Gates had previously expressed a desire for counsel to continue representing him, even "if it meant several months of delay." (*Id.*)  However, counsel's recovery was going more slowly than anticipated.  (*Id.*)  The Court scheduled a conference for September 23, 2019.  On September 16, 2019, defense counsel moved to withdraw from the case because of his ongoing health issues.[9]  (Dkt. No. 107)  The motion to withdraw was granted and new defense counsel was appointed during a conference with the Court on September 23, 2019.  (Dkt. Nos. 108 and 109)  During the conference, it was acknowledged that the Government had filed a post-hearing brief but defendant had not.  (*Id.*)  The Government represented that due to a recent change in the law, Gates no longer qualified as a career offender, and thus there may be an opportunity to reach a pretrial resolution which was previously unavailable.  (*Id.*)  The Court scheduled a continued conference for October 18, 2019, to allow new defense counsel to familiarize himself with the matter and report back as to how he wished to proceed.  (Dkt. No. 110)

During the status conference on October 18, 2019, defense counsel indicated that because of the lengthy prior proceedings and his inability to speak with prior defense

---

[9] Sadly, counsel passed away shortly after moving to withdraw from the case.

counsel, it had taken some time to become familiar with the case. (Dkt. No. 110) However, he was now able to submit a post-hearing brief in thirty days. Counsel further noted that he was the fourth Assistant United States Attorney to be assigned to this case, and that he had not participated in the evidentiary hearing.[10] He stated that because the evidentiary hearing had encompassed the search of 90 Brigham Road on February 7, 2017 and the controlled purchase on November 23, 2016, he had incorrectly assumed, upon entering the case, that the substance of these charges was already included in the pending Indictment. Upon learning that this was not the case, it was the Government's intention to now supersede the Indictment to include the results of the February 7, 2017 search and the November 23, 2016 controlled purchase. After further discussion with counsel as to the best manner to proceed, the Court determined that it was appropriate to complete post-hearing briefing from the evidentiary hearing while the Government took the necessary steps to supersede the Indictment and possibly continue plea discussions. It was noted by the parties that defendant had already been provided discovery as to the subject-matter of the new charges, and had already fully litigated the circumstances of the February 7, 2017 search as well as the November 23, 2016 controlled purchase. Thus, defense counsel did not anticipate the filing of any new suppression motions based upon a superseding indictment. Counsel for the Government indicated that he did not believe a superseding indictment would slow the pace of the case or delay the trial. Defense counsel noted that he may raise a speedy trial issue with respect to the filing of a superseding indictment at this juncture in the case.

---

[10] The current Assistant United States Attorney assigned to this case filed a notice of appearance on June 5, 2019.

On November 22, 2019, defendant filed a post-hearing brief in support of his motion to suppress evidence. (Dkt. No. 111) Oral argument was held on December 2, 2019. (Dkt. No. 112) This Court permitted supplemental filings, after which it considered the matter submitted on January 3, 2020. (Dkt. Nos. 113, 114) From February 21, 2018, the date the pretrial motions were filed, through January 3, 2020, at which time the Court considered the matter submitted for decision, Speedy Trial Act time was excluded, as a matter of law, because of the pending pretrial motions. Defendant did not lodge any objections with the Court regarding the exclusion of time during this period. Likewise, all of defense counsel's extension requests during this time acknowledged that defendant was in agreement that Speedy Trial Act time was properly excluded.

*Superseding Indictment and Scheduling of the Trial*

On January 30, 2020, the Government filed a superseding indictment charging Gates with the following: (1) possession with intent to distribute, and distribution of, cocaine on November 22, 2016, in violation of Sections 841(a)(1) and 841(b)(1)(C) of Title 21 of the United States Code; (2) possession with intent to distribute, and distribution of, cocaine on November 23, 2016; (3) possession with intent to distribute, and distribution of, cocaine on January 26, 2017; (4) possession with intent to distribute, and distribution of, 28 grams or more of cocaine base in violation of Sections 841(a) and 841(b)(1)(B) of Title 21 of the United States Code; (5) possession with intent to distribute cocaine on February 7, 2017; (6) possession with intent to distribute heroin and fentanyl on February 7, 2017; (7) possession with intent to distribute fentanyl, U-4770, furanyl fentanyl and heroin on February 7, 2017; (8) possession with intent to distribute cocaine base on February 7, 2017; (9) possession with intent to distribute U-4770 on February 7,

2017; and (10) using and maintaining a drug involved premises from in or before January 2017 through February 7, 2017, in violation of Section 856(a)(1) of Title 21 of the United States Code (the "Superseding Indictment").     (Dkt. No. 115)    As expected, the Superseding Indictment incorporated charges from the results of the search warrant executed at 90 Brigham Road on February 7, 2017 as well the controlled purchase on November 23, 2016.[11]    On February 5, 2020, the undersigned issued a Report, Recommendation and Order which recommended, *inter alia*, denial of defendant's motion to suppress evidence recovered during the search of 90 Brigham Road on February 7, 2017. (Dkt. No. 117) Gates was arraigned on the Superseding Indictment that same day. (Dkt. No. 119)

On February 10, 2020, defendant moved, before the District Court, for an extension of time to file objections to the Report and Recommendation. (Dkt. Nos. 120) Also on February 10, 2020, defendant requested that the District Court re-refer the case to the undersigned for any continued motion practice as to the Superseding Indictment. (Dkt. Nos. 121)   The District Court granted the motions for an extension of time and continued referral of the case to the undersigned. (Dkt. Nos. 124-126) The District Court also scheduled a trial date in this matter for June 1, 2020, and the parties agreed to the exclusion of Speedy Trial Act time through the date of trial. (Dkt. No. 125)

---

[11] The controlled buy on November 23, 2016 encompasses Counts 1 and 2 of the Superseding Indictment. The Government alleges that Gates took action in furtherance of the sale on November 22, 2016 and completed the sale the next day, on November 23, 2016.

*Motions to Dismiss and Appointment of New Counsel*

On March 4, 2020, defendant filed his first motion to dismiss the Superseding Indictment on Sixth Amendment speedy trial grounds.[12] (Dkt. No. 130) Defendant argued that the prosecution should be dismissed because of the Government's delay in superseding the indictment. (*Id.*) The Government filed a response to the motion to dismiss on March 25, 2020 (Dkt. No. 136), and defendant filed a reply on April 13, 2020 (Dkt. No. 138). Around this same time, defendant requested new counsel. (Dkt. No. 146) On May 5, 2020, this Court issued a Report and Recommendation recommending that defendant's motion to dismiss the Superseding Indictment on Sixth Amendment speedy trial grounds be denied. (Dkt. No. 147) On May 7, 2020, new defense counsel was appointed by the District Court. (Dkt. No. 148) A deadline of June 15, 2020 was scheduled for newly appointed defense counsel to file additional objections to the pending Reports and Recommendations, including the Report and Recommendation recommending denial of the motion to dismiss the indictment. (Dkt. No. 49) A new trial date was scheduled for September 28, 2020. (*Id.*) On June 15, 2020, defense counsel requested an extension of time to file objections to the pending Reports and Recommendations due to the amount of time needed to become familiar with the case in addition to his own workload. (Dkt. No. 150) He stated that "Mr. Gates moves for an exclusion of time from the speedy trial clock for the period of his extension." (Dkt. No. 150)

On June 25, 2020, defense counsel moved to withdraw from the case. (Dkt. No. 154) The District Court held a status conference to address the representation issue on

---

[12] That same day, defendant filed objections to the February 5, 2020 Report and Recommendation addressing the suppression motions. (Dkt. No. 192)

July 10, 2020. (Dkt. No. 159)    At that time, defense counsel indicated that he and defendant had resolved their prior issues, and retracted his motion to withdraw.[13]    (Id.) The Court also set a new deadline of August 10, 2020 for objections to the pending Reports and Recommendations.[14]    (Id.)

On August 11, 2020, defendant filed the instant motion to dismiss the Superseding Indictment, seeking to: (1) re-open his prior motion to dismiss the Superseding Indictment on Speedy Trial grounds; (2) dismiss the Superseding Indictment on the ground that his Sixth Amendment right to a speedy trial has been violated; (3) dismiss the Superseding Indictment on the ground that his statutory right to a speedy trial under Sections 3161(c)(1) and 3161(a)(1) of Title 18 of the United States Code has been violated; (4) dismiss the Superseding Indictment on the ground that his right to a speedy trial under Rule 48(b) of the Federal Rules of Criminal Procedure has been violated; and (5) dismiss the Superseding Indictment on the ground of misconduct by the Government in the presentation of evidence to the grand jury relating to the Superseding Indictment.[15]    (Dkt. No. 168)    The Government filed a response in opposition to the motion on August 21,

---

[13] Defense counsel further requested that the Court appoint an additional attorney from the CJA panel as second counsel. (Dkt. No. 159)    The Government objected, and the Court instructed defendant to file a motion setting forth the basis for the request. (Id.)    Defendant filed a motion to appoint second counsel on July 16, 2020. (Dkt. No. 158)    The Court granted defendant's motion to appoint second counsel, but only through a limited duration to include the filing of objections to the pending Reports and Recommendations. (Dkt. Nos. 163, 164)

[14] On July 27, 2020, this matter was transferred from the Honorable Lawrence J. Vilardo to the Honorable John L. Sinatra, Jr.

[15] On August 12, 2020, the District Court issued a text order noting that defendant had filed a new motion to dismiss for speedy trial violations and other relief, and referred the motion to the undersigned to issue a report and recommendation. (Dkt. No. 169)    In light of the new motions, the Court set a new trial date for November 2, 2020. (Id.)    On August 14, 2020, defendant moved for an expedited hearing on the renewed motion to dismiss, and further requested an order that the District Court hear and determine the motion in the first instance. (Dkt. No. 171)    On August 17, 2020, the District Court denied defendant's request, noting that instead of objecting to the May 5, 2020 Report and Recommendation recommending dismissal of defendant's motion to dismiss on Sixth Amendment speedy trial grounds, defendant elected to file new motions. (Dkt. No. 172)

2020 (Dkt. No. 174) and defendant filed a reply on August 25, 2020 (Dkt. No. 176). The Court heard oral argument on August 31, 2020, at which time it considered the motion submitted.[16]

## DISCUSSION

### *Good Cause to File Second Motion to Dismiss*

Federal Rule of Criminal Procedure 12(b)(3) states that certain motions, including motions raising a defect in instituting the prosecution, "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *See* Fed. R. Crim. P. 12(b)(3). Federal Rule of Criminal Procedure 12(c)(3) further instructs that "[i]f a party does not meet the deadline for the making of a Rule 12(b)(3) motion, the motion is untimely….[b]ut a court may consider the defense, objection, or request if the party shows good cause." *See* Fed. R. Crim. P. 12(c)(3). The Government argues that because the pretrial motion deadline has expired, the instant motion is untimely and should not be considered by the Court. Defendant counters that because certain facts and circumstances were not raised in the first motion to dismiss, which was filed by Gates' prior counsel, the Court should find good cause to allow the current motion.

As explained above, this is the second motion to dismiss the Superseding Indictment filed by defendant in this case. The initial motion to dismiss arose, almost exclusively, from the Government's delay in filing the Superseding Indictment. The instant motion cites the delay in bringing the Superseding Indictment, but also raises a

---

[16] On August 13, 2020, the District Court adopted the undersigned's February 5, 2020 Report and Recommendation recommending denial of defendant's suppression motions. (Dkt. No. 170)

number of additional arguments in favor of dismissal. Further, the motion is filed by Gates' current counsel, who was appointed on May 7, 2020, after the initial motion to dismiss was filed by Gates' prior counsel. Gates' current counsel submits that the instant motion is "based largely on documents and information contained in the files of Gates' first attorney in this matter." (Dkt. No. 176) In fact, Gates' current counsel expressly argues that the actions of Gates' prior attorneys contributed to the delay in this matter and support dismissal of the Superseding Indictment. Thus, the issues raised herein could not have been raised earlier in the prosecution. For this reason, and because Gates' current attorney was appointed on May 7, 2020 and thus did not have an opportunity to file motions under the prior scheduling order, the Court finds good cause to consider the instant motion.

### *Gates' Sixth Amendment Right to a Speedy Trial*

The Sixth Amendment guarantees that "(i)n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *U.S. Const. amend. VI.* In *Barker v. Wingo*, the Supreme Court set forth the essential factors to be considered in determining whether a defendant has been denied his Sixth Amendment right to a speedy trial. 407 U.S. 514 (1972). These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to defendant resulting from the delay. *Id.* at 531-33; *United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 377 (2d Cir. 1979). Though each of these factors is important, other circumstances may be relevant as well. *Barker*, 407 U.S. at 533. Indeed, the *Barker* Court made clear that the constitutional right to a speedy trial cannot "be quantified into a specified number of days or months." *Id.* at 522. Instead, courts must consider the

factors as "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 531. Here, the Court recommends denial of the motion to dismiss based upon its consideration of defendant's argument in light of the factors enumerated by the Supreme Court in *Barker*, as explained in further detail below.

<u>*Length of Delay*</u>

The *Barker* Court held that the length of delay is first and foremost a "triggering mechanism", because until there exists "some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The Second Circuit recently affirmed that "the right to a speedy trial is not…linked to the filing of formal charges but instead attaches at arrest." *United States v. Black*, 918 F.3d 243, 258 (2d Cir. 2019) (declining to adopt the dissent's view that the relevant speedy trial clock for new charges brought in a superseding indictment would begin to run upon the filing of the superseding indictment). Thus, the relevant interval for this Court to consider in determining the length of the delay under *Barker* is the time period between Gates' arrest and the time of trial, regardless of whether the indictment is superseded with new charges. *Id.* at 259-60. Further, the Supreme Court has noted that a delay approaching one year is presumptively prejudicial and sufficient to trigger an inquiry into the remaining *Barker* factors. *Doggett v. United States,* 505 U.S. 647, 652, n. 1 (1992). Here, Gates was arrested on the Federal Criminal Complaint on February 24, 2017. Thirty-six months elapsed between Gates' arrest and his first motion to dismiss to

Superseding Indictment on constitutional speedy trial grounds.[17]  Thus, the delay here is sufficient to trigger the constitutional analysis with respect to the remaining *Barker* factors.

Indeed, the length of delay here, which will be over three years when Gates' trial commences, is significant and merits further scrutiny.  However, with respect to the *Barker* factors, it weighs only slightly against the Government.  As explained in detail in the next section, the delays here were valid given the circumstances of the case and were not exacerbated by the filing of the Superseding Indictment.  Further, there is no evidence of bad faith on the part of the Government, nor was the Government negligent or derelict in moving the case to trial.  *See United States v. Newbern*, 15-CR-98, 2018 U.S. Dist. LEXIS 39943 (WDNY Mar. 12, 2018) (a delay of thirty-three months triggered further analysis but weighed only slightly against the Government because of the nature of the case); *United States v. Williams*, 372 F.3d 96, 112 (2d Cir. 2004) (finding that the district court did not abuse its discretion in concluding, after examining the *Barker* factors, that a delay of nearly three years from indictment to the commencement of trial did not violate defendant's Sixth Amendment rights, and rejecting defendant's argument that the government intentionally delayed the case by waiting fifteen months to file a superseding indictment).  Furthermore, courts in this Circuit have found that delays of much longer periods of time did not give rise to a Sixth Amendment violation, where an evaluation of all other circumstances justified the delay.  *See Parrilla v. Goord*, 02 Civ. 5443, 2004 U.S. Dist. LEXIS 28086 (SDNY July 9, 2004) ("While the roughly thirty-four months that Petitioner awaited trial is presumptively prejudicial, it is far shorter than delays in other

---

[17] The Court notes that forty-one months have elapsed since Gates' arrest and the filing of the instant motion to dismiss, and that forty-four months will elapse between Gates' arrest and the November 2, 2020 trial.

cases where courts have found no Sixth Amendment violation."); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir. 1978) ("The delay here was quite lengthy – approximately 58 months or just under five years – but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found."); *United States v. Ghailani*, 733 F.3d 29, 48 (2d Cir. 2013) (five-year delay, in light of all other circumstances, did not result in violation of defendant's Sixth Amendment right).

### *Reasons for the Delay*

While no *Barker* factor is dispositive, the Second Circuit has held that the reason for the delay "is often critical" in the analysis of a speedy trial claim. *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015) ("The Sixth Amendment is rarely violated by delay attributable entirely to the defendant…or by delay that serves some legitimate government purpose.")   The *Barker* Court enumerated three types of delays: (1) deliberate; (2) neutral; and (3) valid. *Barker*, 407 U.S. at 531. Each type of delay is assigned a different weight: (1) deliberate attempts to hamper the defense weigh heavily against the Government; (2) neutral factors, such as "negligence and over-crowded courts" weigh against the Government, although not as heavily; and (3) valid reasons, such as a missing witness, do not weigh against either party. *Newbern*, 2018 U.S. Dist. 39943, *5-6; *accord Barker*, 407 U.S. at 531.

Defendant argues that virtually all of the delay in this case "can be attributed in large part to the negligence of the prosecution", including the Government's two-and-a-half-year delay in bringing the Superseding Indictment.  However, there are a number of reasons why this case was delayed which are wholly unrelated to the Government's decision to supersede the indictment.  Further, the Court finds that none of these reasons

for delay constituted negligence or malfeasance on the part of the Government.  As directed by *Barker*, the Court now examines, in turn, each reason for delay in this case.

To begin, nine months elapsed between arraignment and the filing of pretrial motions due exclusively to four requests by Gates' first defense counsel for extensions of time to file pretrial motions.  *See Newbern*, 2018 U.S. Dist. LEXIS 39943, *5-6 (finding that reasons for 33-month delay did not weigh heavily against the government where a significant portion of the delay was the result of defendants' requests for extensions of time to file pretrial motions).  Defendant argues that the Government must assume responsibility for this delay because, contrary to the representations made in Gates' first counsel's extension requests, plea negotiations were not ongoing at this time.  A closer look at the record belies this assertion.  As detailed above, Gates' first counsel moved to extend the pretrial motion deadline in July of 2017 and September of 2017 to allow for ongoing plea negotiations.  In a letter to Gates on September 11, 2017, defense counsel recommended that, in light of the strong evidence against him and the significant potential penalties he faced if categorized as a career offender, Gates should seriously consider the Government's proposed plea offer.  Thus, it is evident that Gates' first counsel and the Government were engaged in plea negotiations at the time the first two requests were made to extend the deadlines for pretrial motions.  Then, on October 17, 2017, Gates' first counsel noted, in his file memorandum, that Gates had refused to accept the plea offer and instead expressed a desire to move forward with the filing of motions and a trial. Consistent with this directive, counsel's next two extension requests cited the need to research and file pretrial motions and obtain additional discovery from the Government. In fact, a discovery motion was filed during this time.  Thus, the Court finds that the

reasons cited by Gates' first counsel in support of the extension requests were accurate. Contrary to defendant's arguments, there was no reason for the Government to object to or challenge those requests.

Defendant next argues that the nine months which elapsed between the arraignment and the filing of pretrial motions should count against the Government because "the record demonstrates an unfortunate failure on the part of Mr. Gates' first attorney to act upon his repeated demands that he be given a speedy trial." In support of this argument, Gates submits an affidavit stating that he did not consent to his first counsel's numerous requests for extensions of time to file pretrial motions. (Dkt. No. 168-2) Gates further avers that between his arraignment and October 13, 2017, he consistently informed his first counsel that he was not going to plead guilty, and that he desired a speedy trial. (*Id.*) Defendant reasons that in exceptional circumstances, a delay caused by a defense attorney counts against the government, under the *Barker* analysis, and not the defense. *United States v. Tigano*, 880 F.3d 602, 616 (2d Cir. 2018). The Court finds that such exceptional circumstances do not exist here. To begin, an attorney may seek, or consent to, a continuance without his client's consent. *United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013). Moreover, the record reflects that Gates' first counsel did not cause undue delay, and that he proceeded in a manner that upheld both his professional obligations and his client's instructions. As set forth in detail above, the record before the Court demonstrates that following the arraignment, Gates' first counsel attempted to negotiate a plea resolution with the Government. In fact, counsel strongly believed such a resolution was most beneficial to Gates because of the evidence against him and his high potential guideline range at sentencing should he proceed to trial and

be found guilty. It further appears that, in what is not an uncommon occurrence, Gates initially did not want to accept the plea offer and counsel attempted to convince him otherwise. However, in October of 2017, when it became clear that Gates would not accept the plea, counsel proceeded with researching and filing motions in order to move the case forward to trial, in accordance with Gates' wishes.

Likewise, the Court finds that Gates' October 17, 2017 letter to the Court complaining about his first counsel does not show, as defendant now claims, that Gates' lawyer "acted in direct contradiction to his express instructions." Gates states, in his affidavit, that he spoke with his first counsel on the phone on October 12, 2017, at which time they discussed counsel's September 11, 2017 letter strongly advising Gates to consider a plea. Gates indicates that the next day, on October 13, 2017, he wrote to this Court complaining that his lawyer was violating his Sixth Amendment right to a speedy trial. Thus, it is evident that during the October 12, 2017 phone call, Gates and his counsel had a disagreement as to whether Gates should accept the Government's plea offer, and Gates insisted that he wanted to proceed to trial. While Gates did write to the Court the next day to complain about counsel, likely because counsel was strongly advising him to accept the plea, the record reflects that almost immediately after the October 12 phone call and October 13 letter, counsel proceeded to request discovery and prepare to file pretrial motions, in accordance with Gates' desire to move forward with a trial. The Court conference on December 11, 2017 further reflects that Gates' October 13, 2017 complaints about his first counsel's strategy were resolved after counsel sought additional discovery and commenced filing pretrial motions. In fact, during the conference, Gates agreed with his lawyer's statements that they had spoken about the

letter and that the issues raised therein had all been addressed.  Consistent with his representations in the prior extension requests, defense counsel filed pretrial motions, including a suppression motion, on February 21, 2018.[18]

Approximately twelve months then elapsed between the filing of pretrial motions and the conclusion of the evidentiary hearings on Gates' motion to suppress.  This period of time is also not attributable to Government inaction.  During this time, defense counsel was replaced due to a conflict of interest.  Gates' second defense counsel vigorously litigated his pretrial motions, including the suppression motion, and successfully moved to expand the scope of the evidentiary hearing.  *See United States v. Holley*, 638 Fed. Appx. 93, 96 (2d Cir. 2016) (no violation of defendant's Sixth Amendment right to a speedy trial where the majority of delay was attributable to motion practice by defendants, and not to any bad faith or negligence on the part of the government); *United States v. Swinton*, 797 Fed. Appx. 589 (2d Cir. 2019) (under the *Barker* analysis, the "reason for delay" factor "cut in favor of the Government" where 51 out of the 57-month delay arose from defendant's challenge to his prior conviction, changes of counsel, and filing of an omnibus motion that included a complex motion to suppress).

---

[18] The Court rejects defendant's argument that a speedy trial violation occurred because Gates' first counsel did not tell him that he could forego the filing of motions and proceed immediately to trial.  Gates' affidavit reflects that Gates' first counsel informed Gates that counsel believed the Government was going to supersede the Indictment to include the results of the February 7, 2017 search.  (Dkt. No. 168-2)  Counsel further advised Gates that suppression motions were relevant and necessary to potentially dismiss those charges, or preserve objections to the evidence obtained from that search.  (*Id.*)  Thus, it is evident that Gates' first counsel advised Gates of why he believed a pretrial suppression motion should be filed.  Moreover, throughout the subsequent filing and litigation of that suppression motion, Gates did not raise an objection to this course of action with either the Government or the Court.  It is disingenuous for Gates to now argue, on the eve of trial and after he has had an opportunity to fully litigate his suppression motion without complaint, that a speedy trial violation should be found because the motion should not have been filed in the first place.  Moreover, such a finding would hinder effective representation of criminal defendants by defense counsel.  Under this logic, a lawyer could be faulted any time he or she advised a client, who wanted to proceed to trial, that there was a valid and necessary basis for filing suppression motions, as opposed to expressly advising them or suggesting that they could forego motions and proceed directly to trial.

Defendant counters that this period of time should count against the Government because the Government "failed to question the propriety" of defendant's motion to suppress. Defendant points to the fact that, at the time the suppression motion was filed, the evidence from the February 7, 2017 search was not part of the Indictment, and therefore the motion was "superfluous". The Court rejects defendant's argument that the Government is somehow at fault for this delay because they did not prevent him from filing or litigating his own suppression motion. Clearly, it would have been neither appropriate nor permitted for the Government to question defendant's strategy or attempt to prohibit defendant from filing the suppression motions of his choice.[19] Moreover, the suppression motion was relevant to issues or potential issues in the case. As detailed above, defendant knew, from the day of his arraignment, that the Government was very likely to supersede the Indictment to include the results of the February 7, 2017 search. Further, prior to the start of the evidentiary hearing, defense counsel represented that he was also challenging the February 7, 2017 search because it could be used as evidence against him at trial pursuant Federal Rule of Evidence 404(b).

Another ten months elapsed between the conclusion of the evidentiary hearing and the completion of post-hearing briefs. This delay was caused by Gates' second counsel's unfortunate medical diagnosis and treatment as well as his eventual need to withdraw from the case. *See Lane*, 561 F.2d at 1078-79 (denying motion to dismiss based upon violation of sixth amendment speedy trial rights because "there were a number of reasons for the delay, but [defendant] and his counsel were responsible for much of it with their repeated request for continuances [and defendants'] first counsel's

---

[19] Nor would it have been proper for this Court to prohibit defendant from filing a suppression motion.

24

illness and death were also factors."); *United States v. Howard*, 443 Fed. Appx. 596, 597 (2d Cir. 2011) (upon consideration of the *Barker* factors, the reason for delay did not weigh in defendant's favor because a significant portion of the delay in [defendant's] trial was attributable to his own pretrial motions as well as ends-of-justice continuances).

Defendant argues that this time should not be counted against him because he did not consent to his second counsel's requests for extensions of time to file post-hearing briefs, and because he repeatedly told his second counsel that he wanted a trial as soon as possible. (Dkt. No. 168-3)  Here again, the record belies defendant's contentions.  In each extension request, Gates' second counsel acknowledged that motions were pending and that Speedy Trial Act time was properly tolled.  In addition, before he was forced to withdraw for health issues, Gates' second defense counsel informed the Court that defendant expressed a desire for him to remain on the case, even if it meant several months delay.[20]  Thus, neither the Court nor the Government had any reason to believe that Gates objected to either the continued litigation of his pretrial motions, or to any of second counsel's extension requests.  Defendant contends that the Court should now accept his belated and self-serving assertions that, throughout the entire time his second counsel was vigorously litigating the suppression motions on his behalf, he did not consent to that course of action or to defense counsel seeking extensions of time to remain in the case.  The Court does not agree.  By Gates' logic, any defendant could, on the eve of trial, claim that their speedy trial rights were violated because they had not consented to prior extension requests or the strategy of their own counsel, regardless of the representations made by their counsel to the Court and the Government over the

---

[20] Gates now claims that he never made this statement.  (Dkt. No. 168-2)

course of the prosecution. In fact, the only way to avoid a potential speedy trial violation would be to require a colloquy between the Court, defendant, and defense counsel every time an extension request was made. Such a practice would be impractical, inefficient and, most importantly, could infringe on the sanctity and confidentiality of the attorney-client relationship.

The Court also notes that, throughout the course of the pretrial proceedings, defendant has not been hesitant to himself raise issues with the Court regarding his case or his representation. Not only did defendant write the Court on October 13, 2017 complaining about his first defense counsel, he also has (1) filed his own supplemental brief in support of this motion, (2) addressed the Court directly to raise issues during proceedings, and (3) wrote letters of complaint and requested new counsel on multiple occasions after his second counsel was forced to withdraw for health issues.[21] Thus, the Court can logically infer that if defendant had been dissatisfied with the strategy and decisions of his second counsel, he would have made such complaints known to the Court and the Government at that time.

Lastly, defendant argues that the Government is responsible for the delay because it waited an inordinate amount of time to supersede the indictment. The Court notes that

---

[21] After second counsel withdrew for health reasons, a third defense counsel was appointed by this Court on October 18, 2019. (Dkt. No. 110) On February 7, 2020, this Court held a status conference to address a letter received by the Court from defendant complaining about issues with respect to his third defense counsel. (Dkt. No. 123) At that time, defendant and third counsel indicated that they resolved their issues. (Id.) On May 4, 2020, defendant again requested new counsel during an appearance before the District Court. (Dkt. No. 146) The District Court granted the request, third counsel was relieved, and a fourth defense counsel was appointed on May 7, 2020. (Dkt. No. 148) On June 25, 2020, fourth defense counsel moved to withdraw from the case. (Dkt. No. 154) In the public portion of the affidavit filed in support of the motion to withdraw, fourth defense counsel indicated that defendant informed counsel that he did not want counsel to represent him anymore. (Id.) Defendant also wrote a letter to the District Court complaining about fourth defense counsel on July 2, 2020. (Id.) On July 10, 2020, fourth defense counsel represented to the District Court that he and defendant resolved their issues, and he agreed to remain in the case. (Id.)

during the status conference on October 18, 2019, the current Assistant United States Attorney handling this matter admitted that at the time he entered the case in June of 2019, he erroneously believed that the results of the February 7, 2017 search of 90 Brigham Road and the November 23, 2016 controlled purchase had already been incorporated in the pending Indictment. Thus, at least a portion of the delay in filing the Superseding Indictment appears to be the result of Government error or misunderstanding. It may also be the case that prior to June of 2019, the Government was attempting to negotiate a plea agreement with Gates using, as an incentive, its ability to supersede the Indictment.

However, more significant here than the reason for the delay in superseding the indictment is the fact that the filing of the Superseding Indictment *did not cause* any delays in bringing this case to trial. Well before the Superseding Indictment was filed, defense counsel was provided discovery as to the November 23, 2016 controlled purchase and the February 7, 2017 search, and the parties had engaged in extensive motion practice as well as a lengthy two-day suppression hearing regarding this evidence. During the October 18, 2019 status conference, third defense counsel stated that he did not foresee the need to file any new omnibus or suppression motions based on the Superseding Indictment and the Government indicated that the Superseding Indictment would not slow the pace of the case moving to trial. Indeed, a June 1, 2020 trial date was scheduled only a month after the Superseding Indictment was filed. Considering the procedural and factual history of this case, there is no indication that, had the Government superseded the indictment earlier in the proceedings, the matter would be proceeding to trial any sooner. In *United States v. Pettway*, a Western District Court analyzing a motion to

dismiss for violation of the Sixth Amendment, declined to charge delay against the government where a fourth superseding indictment was filed a little over a year after the case began.  12-CR-103, 2017 U.S. Dist. LEXIS 128093 (WDNY Aug. 11, 2017).  The Court noted that in the year before the fourth superseding indictment was returned, the case continued to be actively litigated and therefore "in the context of the overall proceedings, the government's conduct in seeking multiple superseding indictments over the course of a little more than a year did not impact the progress of this case as significantly as [defendant] contends."  *Id.* at *7-9.  Likewise here, the Government's delayed filing of the Superseding Indictment, whether the result of negligence, plea negotiations, or both, did not impact the progress of the case.  *Compare United States v. Black*, 918 F.3d at 261-62 (a significant amount of delay attributed to the Government's decision to file a superseding indictment because it resulted in much of the pre-trial litigation prior to the superseding indictment needing to be restarted).  *See also United States v. Wood*, 17-CR-103, 2019 U.S. LEXIS 193172, *45 (WDNY Aug. 30, 2019) ("[T]he filing of a superseding indictment does not automatically or *per se* establish a Sixth Amendment speedy trial violation.")

       In sum, the Court finds that the reason for delay here was due, almost exclusively, to defense counsel's requests for extensions of time to file pretrial motions, the litigation of a suppression motion, and issues with Gates' representation, including a conflict that arose during the case as to his first defense counsel and the unfortunate health issues that arose for his second defense counsel.  Defendant contends that while his lawyers themselves may have caused delay, the delay should not be attributed to him because

he did not agree with their strategies or consent to their extension requests.  As explained in detail above, the record before the Court does not support this argument.

The Court acknowledges that a small portion of the delay in this matter is attributable to plea negotiations, including the time between defendant's arraignment and the filing of pretrial motions.  The Second Circuit has recognized that, to the extent plea negotiations cause a period of delay, "the government must assume responsibility for the risk of institutional delay where the bargain ultimately is unsuccessful." *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 378 (2d Cir. 1979).  Further, the Court acknowledges that the litigation of pretrial motions did take a substantial length of time in this case.  The Court finds that the vast majority of this time should not count against the Government, since it was the result defendant's extension requests and pursuit of pretrial suppression motions.  To be sure, some of the delay was caused by factors that could not have been avoided by either the Government or defendant, such as attorney conflicts or serious illness.  However, even if this "neutral" delay is weighed against the Government, the fact remains that none of the delay here is attributable either to deliberate procrastination or negligent inaction on the part of the Government, much less bad faith.  In fact, based on the Court's review of the docket, the Government never once sought an adjournment of a proceeding or requested an extension of time to file a motion or response.  *See Lane*, 561 F.2d at 1079 (while institutional or neutral delays generally weigh against the government, they "do so less heavily than deliberate delays or delays related to inexcusable inefficiency") (internal citations and quotations omitted).  Thus, on balance, the reasons for delay do not weigh in favor of finding a speedy trial violation.

<u>*Defendant's Assertion of his Sixth Amendment Right*</u>

A defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right." *Barker*, 407 U.S. at 531-32. The *Barker* Court emphasized that "failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Id* at 532.

Here, the Court finds that Gates did not assert his right to a speedy trial until his first motion to dismiss the Superseding Indictment, approximately thirty-six months into the case. His lack of diligence in asserting his Sixth Amendment right weighs against him. *See e.g. Newbern*, 2018 U.S. Dist. LEXIS 39943, *8 ("After 32 months, the instant motion contains Defendant's first invocation of his speedy trial right – accordingly, this factor weighs heavily against him."); *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) ("The third factor weighs heavily against appellants. . . . [B]oth defendants waited roughly 22 months before advancing their speedy trial claims, and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them."); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980) (weighing the third *Barker* factor against the defendants where they "waited until immediately before trial to file their motion to dismiss on speedy trial grounds."); *Lane*, 561 F.2d at 1075 (finding that petitioner's "eve of trial" speedy trial motion was "indicative of an interest in having the indictment dismissed, rather than of an interest in expediting the proceedings.")

Defendant maintains that he "explicitly asserted his speedy trial rights early, often, and emphatically, both to his lawyers and to the Court." However, the record does not support this statement. Gates' October 17, 2017 letter to the Court indicated that Gates

he would not accept a plea, and that he wanted to exercise his right to a speedy trial. Shortly after this letter was sent, defense counsel was actively engaging in discovery as well as the researching and filing of pretrial motions. In sum, he was moving the case forward to trial in accordance with his client's directives. During the status conference with the Court to address the letter, defense counsel clearly represented that the issues set forth in the letter, the sum of which were speedy trial complaints, had all been resolved. The Court asked Gates if he agreed with this statement, and Gates answered yes. The Court and defense counsel proceeded to discuss the status of a discovery motion. By both agreeing with his counsel's statement that the complaints in his letter had been resolved, and failing to object to his counsel's statements regarding discovery and the filing of further motions, Gates indicated to the Court that he was in agreement with the manner in which the case was proceeding. For these reasons, the Court does not find, based on either the October 17, 2017 letter or the December 11, 2017 status conference, that Gates disagreed with his first counsel's filing of motions and instead wanted an immediate trial.

Defendant also contends that he repeatedly told his second and third counsel that he desired a speedy trial. However, there is no evidence in the record to support this contention other than defendant's self-serving and belated statements. As described above, defendant has not been hesitant to voice dissatisfaction with his legal representation or communicate directly with the Court. Thus, the Court finds it significant that, from October 17, 2017, when his letter complaint was resolved, through March 4, 2020, when he made his first motion to dismiss the Superseding Indictment for constitutional speedy trial violations, defendant made no attempt to make either the Court

or the Government aware of his alleged desire to stop litigating his pretrial motions and have an immediate trial. For these reasons, and because of the representations made on the record by defense counsel throughout the course of pretrial proceedings, both the Court and the Government had every reason to believe that defendant was satisfied with the manner in which his case was progressing and that he was not seeking an immediate trial. Contrary to defendant's assertions, this is a far cry from *United States v. Tigano*, where the defendant "requested his speedy trial rights to frequently and vociferously" that it was "simply inconceivable the government was not 'put on notice' that this issue would resurface if [defendant's] speedy trial rights were not protected." 880 F.3d 602, 617 (2d Cir. 2018).

Thus, this factor weighs against finding a Sixth Amendment speedy trial violation.

### Prejudice to Defendant

The *Barker* Court instructed that prejudice to a defendant should be analyzed in accordance with the interests the Sixth Amendment right to a speedy trial is designed to protect, which include (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety or concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." 407 U.S. at 532. Impairment of defense is considered the most serious in the analysis of prejudice. *United States v. Moreno*, 789 F.3d 72, 81 (2d Cir. 2015). *See United States v. Adad*, 514 F.3d 271, 275 (2d Cir. 2008) (Courts are generally reluctant to find a speedy trial violation in the absence of specific prejudice.)

### Pretrial Incarceration

Gates will have been incarcerated for approximately forty-four months when his trial commences. Indeed, this is a substantial amount of time to be in prison awaiting trial.

However, Gates has not demonstrated that he was subjected to especially oppressive conditions greater than those faced by other incarcerated defendants. *See Newbern*, 2018 U.S. Dist. LEXIS 39943, *12 (finding that a defendant's 33 months of incarceration in local jails pending trial did not present any "uniquely oppressive circumstances to be afforded additional weight" in the *Barker* analysis, short of the general impact of extended pretrial incarceration in a local jail); *United States v. Alvarez*, 541 Fed. Appx. 80, *84-85 (2d Cir. 2013) (finding little, if any, prejudice, despite "years of pre-trial incarceration"); *Vasquez*, 918 F.2d at 338 (noting that twenty-six months incarceration in the pretrial period was a hardship and "must be included in the assessment of prejudice" but finding that the circumstances did not "approach the prejudice suffered by defendants in cases where we have found a speedy trial violation.")

### *Anxiety or Concern of the Accused*

Likewise, Gates fails to demonstrate that the delay here caused him a heightened level of anxiety or concern, over and above the anxiety and concern faced by most criminal defendants charged in a federal indictment.  To begin, any claim by Gates that he was anxious to bring this matter to trial is belied by the fact that he waited approximately thirty-six months to assert his right to a speedy trial.  In his first motion to dismiss the Superseding Indictment, defendant argues that he suffered anxiety because he was "under constant threat that the government would simply supersede the indictment." However, the Court finds that Gates had an accurate picture as to the likely scope of the charges and evidence against him from the inception of this case.   At his arraignment on the Indictment, the Government acknowledged that it may supersede the Indictment to include the results of the February 7, 2017 search warrant.   In fact,

defendant's decision to file suppression motions related to the February 7, 2017 search warrant and the November 23, 2016 controlled buy indicate that he was fairly certain that these allegations would be used against him at trial in some manner, either by way of a superseding indictment or as potential 404(b) evidence.    Further, the Government represents that the charges added in the Superseding Indictment did not increase the statutory mandatory minimum applicable to this case.  Thus, it does not appear that Gates would have been concerned about a substantial increase in his potential sentencing range dependent on the Government's decision to supersede the Indictment.[22]

### Impairment of Defense

Defendant argues that he suffered actual prejudice because the delay in bringing him to trial exposed him to the Superseding Indictment, "which resulted in him facing ten charges instead of two."  The Court disagrees.   As noted above, the Government contemplated charging defendant with both the results of the February 7, 2017 search warrant and the November 23, 2016 controlled buy from the inception of this case. Likewise, it appears that the Government was in possession of all of the evidence needed to support these additional charges from the time of defendant's arrest on the Federal Criminal Complaint.   Moreover, the record reflects that through the entirety of this prosecution, everyone involved, including defendant, understood that whenever the matter proceeded to trial, the Government would likely seek to supersede the indictment to incorporate the additional charges.  Thus, there is no basis to conclude that should

---

[22] In his first motion to dismiss the Superseding Indictment, defendant argued that he suffered heightened anxiety and concern as a result of being incarcerated during the current Novel Coronavirus Disease (COVID-19) outbreak.  Defendant does not restate this argument in the instant motion to dismiss.  To the extent defendant is still making this argument, the Court finds that, for all the reasons stated in its May 6, 2020 Report and Recommendation, (Dkt. No. 147, pg. 22), the delay in this case is not the cause of defendant's COVID-19 related anxiety, such that the appropriate remedy would be a dismissal of the charges pursuant to the Sixth Amendment.

defendant have received an immediate trial, he would not have been faced with the additional charges incorporated in the Superseding Indictment.[23]

In sum, while the Court does not make light of the substantial length of time Gates has been incarcerated pending trial, as well as the anxiety which would naturally accompany these circumstances, Gates' pretrial incarceration does not establish a constitutional violation when considered in light of all the other facts presented here. Further, the Court finds that Gates has not demonstrated actual prejudice or a trial-related disadvantage sufficient to constitute a Sixth Amendment violation. *See United States v. Cain*, 671 F.3d 271, 297 (2d Cir. 2012) (noting that "we have generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation.") Thus, the fourth *Barker* factor does not weigh in defendant's favor. However, because of the length of Gates' incarceration, the Court also does not weigh this factor in favor of the Government. Instead, the Court finds the fourth factor to be neutral.

### Balancing of the Barker Factors

The first *Barker* factor, the length of delay, weighs slightly in favor of Gates. The second *Barker* factor, the reason for delay, weighs, on balance, slightly in favor of the Government. The third *Barker* factor, assertion of the right, weighs in favor of the Government. The fourth *Barker* factor, prejudice, is neutral. Taking these weights into consideration, the Court finds no violation of Gates' Sixth Amendment right to a speedy trial, and recommends that defendant's motion to dismiss the Superseding Indictment on

---

[23] In his first motion to dismiss the superseding indictment, defendant argued that he suffered actual prejudice to his defense because three witnesses he intended to call at trial are now deceased. Defendant does not restate this argument in his instant motion to dismiss the Superseding Indictment. To the extent that defendant continues to make this argument, the Court finds, for all the reasons stated in its May 6, 2020 Report and Recommendation, (Dkt. No. 147, pgs. 23-25), that the alleged loss of these witnesses did not result in the impairment of his defense.

constitutional speedy trial grounds be denied.  *See Newbern*, 2018 U.S. Dist. LEXIS 39943, *15 (finding no constitutional violation of defendant's right to a speedy trial where the first, second and fourth *Barker* factors weighed slightly against the government, but the third weighed heavily against defendant); *Swinton*, 797 Fed. Appx. at 596 (finding that the district court did not err in rejecting defendant's argument that he was denied his Sixth Amendment right to a speedy trial where the length of delay weighed heavily in favor of defendant, the reason for delay and the assertion of the right weighed in favor of the government, and the prejudice prong slightly favored defendant); *United States v. Shine*, 17-CV-28, 2018 U.S. Dist. LEXIS 132809, *9-10 (WDNY Aug. 7, 2018) (no violation of constitutional right to a speedy trial where second and fourth *Barker* factors weighed slightly against the government, the first was neutral, and the third weighed definitively against defendant).

### *Gates' Rights Under the Speedy Trial Act*

The Speedy Trial Act ("STA") requires that a defendant be brought to trial within 70 days of the return of an indictment or initial appearance, whichever is later.  *See* 18 U.S.C. §§3161(c)(1).  The STA excludes delay from the 70-day clock as a matter of law due to the filing of "any pretrial motion", through prompt disposition of the motion.  *See* 18 U.S.C. §3161(h)(1)(D).  In addition, the Court may grant a continuance, pursuant to the STA, where the Court finds that the ends of justice served by taking such action outweighs the best interests of the public and the defendant in a speedy trial.  *See* 18 U.S.C. §3161(h)(7)(A).

Defendant moves to dismiss the Superseding Indictment on the grounds that his statutory right to a speedy trial has been violated.  Defendant submits that, at his

arraignment on May 19, 2017, he agreed to a scheduling order that excluded STA time up to and including August 22, 2017, the original date for the filing of pretrial motions. Defendant argues that he agreed to no other exclusions of STA time. However, "[t]he STA does not include the defendant's consent among the factors a court must consider in weighing whether the ends of justice would be served in granting a continuance." *Lynch*, 726 F.3d at 355. Further, when motions are pending, STA time is excluded as a matter of law. Thus, the Court rejects defendant's argument that his statutory right to a speedy trial was violated because STA time exclusions were improper since he did not expressly consent to the adjournments. The Court recommends that defendant's motion to dismiss the Superseding Indictment on statutory speedy trial grounds be denied.

### *Dismissal of Counts 5, 6 and 7 of the Superseding Indictment*

The Government is required to return an indictment within thirty days of a defendant's arrest, subject to additional time agreed upon by the Government and defendant and approved by the Court. *See* 18 U.S.C. §3161(b). Thus, if a charge in a complaint is not incorporated in an indictment during that period of time, it is subject to dismissal. *See* 18 U.S.C. §3162(a)(1). The Second Circuit has held that any charge contained in a complaint that is not timely made part of an indictment is subject to dismissal if later included in a superseding indictment. *United States v. Napolitano*, 761 F.2d 135, 137-38 (2d Cir. 1985).

Here, defendant argues that Counts 5, 6 and 7 of the Superseding Indictment must be dismissed, pursuant to Section 3162(a)(1), because they restate two of the charges contained in the Federal Criminal Complaint, which were not included in the original Indictment. However, the additional counts in the Superseding Indictment are

37

substantially different from those alleged in the Federal Criminal Complaint. Unlike the Federal Criminal complaint, the Superseding Indictment charges defendant with possession with intent to distribute fentanyl, U-47700, and furanyl fentanyl. Moreover, Count 7 of the Superseding Indictment also pleads an amount, which is an additional element not pled in the Federal Criminal Complaint. Thus, the Court finds that dismissal is not warranted pursuant to Section 3162(a)(1) and recommends that defendant's motion to dismiss the Superseding Indictment on this ground be denied.

### Federal Rule of Criminal Procedure 48(b)

Defendant also moves for dismissal of the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 48(b). Rule 48(b) provides that a court may dismiss an indictment if there is "unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial." *See* Fed. R. Crim. P. 48(b); *United States v. Marion*, 404 U.S. 307, 319 (1971). For all of the same reasons the Court does not recommend dismissal of the Superseding Indictment on the grounds that defendant's constitutional speedy trial rights have been violated, the Court also does not recommend dismissal of the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 48(b).

### Improper Conduct Before the Grand Jury

During the suppression hearings held before this Court on August 17, 2018 and February 22, 2019, there was testimony that, on the evening of November 22, 2016, defendant arrived unannounced at the confidential informant's ("CI") residence to deliver one-half ounce of cocaine, even though the controlled buy was not scheduled to occur

until the next day. Defendant submits that an affidavit provided by the CI and submitted at the time of the suppression hearing, indicates that, on November 22, 2016, the CI received a call from defendant indicating that he intended to stop by the CI's residence later that evening. The CI states that after he was contacted by defendant and *before* defendant arrived at his residence, he called the law enforcement officer he was working with and inquired as to what he should do. The CI states that the officer told him to take the drugs from defendant and deliver them to the officer the next day. In contrast, the law enforcement officer testified, at the suppression hearing, that the CI contacted him *after* defendant arrived at his residence on November 22, 206 and delivered one-half ounce of cocaine. Defendant now argues that if the Government submitted evidence of the November 22/November 23, 2016 controlled buy to the grand jury without informing them of the discrepancy between the testimony of the CI and the officer, the grand jury would not have been able to render a fair and unbiased vote as to this charge. Defendant requests that the Court review the grand jury minutes *in camera* and, if an impropriety is discovered, dismiss the Superseding Indictment with prejudice.

A court may authorize disclosure of grand jury testimony "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." *See* Fed. R. Crim. P. 6(e)(3)(E)(ii). To justify such disclosure, a defendant must satisfy a heavy burden of showing "compelling necessity" outweighs the strong public policy in support of the "indispensable secrecy of grand jury proceedings." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681-82 (1958). *See In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973) ("Maintaining the secrecy of grand jury proceedings is a tradition in the United States that pre-dates the birth of the

nation itself."). Thus, "[a] review of grand jury minutes is rarely permitted without factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990); *United States v. Richards*, 94 F. Supp. 2d 304, 314 (EDNY 2000) ("The strong presumption of regularity in grand jury proceedings cannot be outweighed by purely conclusory or speculative allegations of misconduct."). Moreover, "an indictment, if valid on its face, may not be challenged on the ground that it is based on inadequate evidence." *United States v. Casamento*, 887 F.2d 1141 (2d Cir. 1989).

The Court does not find any basis exists to review the grand jury minutes in this case. Defendant offers only speculation that the Government either presented insufficient evidence to the grand jury, or offered contradictory testimony to the grand jury. Defendant's suppositions are insufficient to challenge the presumption of regularity inherent in a grand jury proceeding. They are also insufficient to disturb the strong public policy in support of the secrecy surrounding a grand jury proceeding. Thus, the Court denies defendant's request for an *in camera* review of the grand jury minutes, and recommends denial of defendant's motion to dismiss the Superseding Indictment on the grounds of improper conduct by the Government before the grand jury.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Nathaniel Gates, Jr.'s second motion to dismiss the superseding indictment (Dkt. No. 168) be denied in its entirety.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Sinatra.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

Dated: September 30, 2020
       Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

41